UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DUSTIN PATRICK CURTIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  4:23-CV-00381 RLW |
| ) | |
| STATE OF MISSOURI, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Self-represented plaintiff Dustin Patrick Curtis brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. The matter is now before the Court on review of plaintiff's motion for leave to proceed in forma pauperis, or without prepayment of the required filing fees and costs. [ECF No. 2]. While incarcerated, plaintiff has brought more than three civil actions in federal court that were dismissed as frivolous, malicious, or for failure to state a claim. As discussed below, plaintiff is subject to the three strikes rule, 28 U.S.C. § 1915(g). Accordingly, the Court will deny plaintiff's motion for leave to proceed in forma pauperis and dismiss plaintiff's complaint without prejudice, subject to refiling as a fully paid complaint.

### The Complaint

Plaintiff Dustin Patrick Curtis, an inmate at St. Charles County Correctional Center, filed this action pursuant to 42 U.S.C. § 1983 on March 23, 2023, by placing his complaint in the prison mailing system at St. Charles County Correctional Center. He names the following defendants in this action: the State of Missouri; Unknown Officer Smith (St. Peters Police Department); St. Charles County Correctional Center; St. Peters Police Department; Unknown Arresting Officers of the St. Peters Police Department (on the scene through transport); Officer Unknown Anderson

(St. Peters Police Department); Sheriff of St. Peters Police Department; Governor Mike Parsons; Attorney General Eric Schmitt; and John Doe Officer in Charge of Putting Plaintiff in the Suicide Unit (St. Charles County Correctional Center). Plaintiff sues Officer Smith in her official capacity. However, he is silent as to the capacities under which he is suing the remaining defendants.

In his complaint, filed on a prisoner civil rights complaint form, plaintiff asserts that he was arrested by defendant Unknown Officer Smith, from the St. Peters Police Department, on or about February 26, 2023. He claims that Officer Smith subjected him to excessive force during his arrest, claiming that she "threw [him] into a wall," which put him into a coma. Plaintiff additionally claims that four other unnamed police officers "hit" him, tied him up, and choked him after he was already down on the ground. He claims that he was carried to a police car by his throat and feet, but he does not allege which officers carried him and/or choked him. Plaintiff asserts that he ended up with "black eyes" and bruises on his face and body.[1]

Plaintiff was taken to the St. Peters Police Department where he claims that he was "forcefully" made to take off his clothes. He does not name the defendant who ordered him to take off his clothes. However, he asserts that an Officer Unknown Anderson pat searched him and "put a finger in [his] butt" before placing him in a holding cell. Plaintiff refers to this as a sexual assault.[2] He states that he asked an unnamed individual at the St. Peters Police Station to transport him to the hospital after the search, but his request was denied. At some point, plaintiff was transported

---

[1] In one portion of his complaint plaintiff claims he was in a coma for two weeks. However, it appears that he was awake during and immediately after his arrest. Moreover, it is unclear from the complaint what actions allegedly caused the coma and when exactly the alleged coma occurred. For example, plaintiff appears to remember the occurrences at the St. Peters Police Station, as well as what happened after his transfer to the St. Charles County Correctional Center.

[2] In another portion of plaintiff's complaint, he states that he was "sexually assaulted" and "raped." However, he does not provide facts relating to the alleged sexual assault or rape. Thus, the Court is unsure if plaintiff is referring to the alleged search by Officer Anderson or a different incident.

to the St. Charles County Correctional Center, where he was placed in an observation (suicide) cell and made to sleep naked daily. Plaintiff does not indicate how long he was in the suicide cell.

A review of Missouri.Case.Net indicates that plaintiff was arrested on February 25, 2023, after his mother, Cheryl Curtis, contacted police to report that plaintiff was armed with a steak knife and threatening to stab himself.[3] *See State v. Curtis*, No. 2311-CR00558 (11th Jud. Cir., St. Charles Cnty., Mo.).

The probable cause statement in Case No. 2311-CR00558 states as follows:

I, Caitlyn Smith DSN 484, with the St. Peters Police Department (a law enforcement agency), state that the facts contained herein are true to my best knowledge and belief and that any false statements made are punishable by law.

I have probable cause to believe that:

On or about 02/25/2023 at 82 MADRID CT-SAINT PETERS in Saint Charles County, Missouri, Dustin Curtis did commit the following offenses:

Assault 3rd Degree – Special Victim: RSMO 565.040
Resisting/Interfering with Arrest for a Felony: RSMO575.150

I responded to Cheryl Curtis' home after she called 911, stating Dustin Curtis was armed with a steak knife and threatening to "stab himself."

I met Cheryl at the door and she was visibly upset and appeared to be crying. I began to walk up the stairs when Dustin walked around his mother and opened the storm door to walk outside. After Dustin exited the house he started yelling and shoved me with two hands in the upper chest. I said to Dustin, "I'm here to help, what's going on?" Dustin ignored my statement and continued to yell and push me. I restrained Dustin by pushing him up against the side wall next to the front door. Dustin continued to yell and stated he was leaving the house. I told Dustin he was not leaving and that I needed to speak with him. Dustin began to shove me multiple more times. I then pinned him against the wall and got on my radio asking units to expedite due to the physical resisting. While speaking on my radio, Dustin opened the storm door and began to walk back inside. Dustin had managed to slightly open the door and get one shoulder inside of the residence. Due to the information that

---

[3]Plaintiff's underlying state court case was reviewed on Case.net, Missouri's online case management system. The Court takes judicial notice of these public records. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records").

> Dustin was in possession of a knife before my arrival, and was a threat to the subjects inside, I restrained him from entering back into the house. I grabbed Dustin by the arm and shoulder and pulled him back outside of the house. After pulling Dustin outside, I used my body to close the storm door so that Dustin was unable to open it anymore.
>
> I instructed Dustin to get on the ground and put his hands behind his back repeatedly throughout the struggle. He was attempting to flee the scene when I grabbed a hold of both of his arms and twisted my body in order to take Dustin to the ground and get him into custody. After successfully taking Dustin to the ground, he attempted to get up off the wooden porch. I positioned myself behind Dustin and wrapped my arms around him in a bear hug style. I kept a hold of both of Dustin's arms and used my body weight to pull him back down to the ground. Dustin and I continued to wrestle on the porch until other units arrived on scene and took him into custody.
>
> Once Dustin was in custody, I could feel pain in both of my knees. An assessment of myself for injuries revealed a scrape on my right knee and bruises on both my left and right knees.
> . . . .
> I have reasonable grounds to believe that the defendant will not appear upon the summons or is a danger to the crime victim, the community or any other person because:
>
> Dustin has an extensive arrest history dating back to 2004. Dustin has been arrested and prosecuted for Domestic Assault 2nd and 3rd Degree, Unlawful Use of a Weapon, Burglary 2nd Degree, Kidnapping, Possession of a Controlled Substance, Property Damage lst Degree, Resisting Arrest, Tampering 1st Degree, Stealing, Driving While Intoxicated, Leaving the Scene of an Accident and Driving While Revoked. Dustin currently has a warrant for his arrest through St Charles County for Failure to Appear- Kidnapping 2nd Degree (warrant #23ADFTA564, bond amount $25,000). Dustin has a history of violence, drug abuse, and mental health issues.

A criminal complaint was filed against plaintiff on February 26, 2023. *See State v. Curtis*, No. 2311-CR00558 (11th Jud. Cir., St. Charles, Mo.). He was charged with unlawful use of a weapon, assault in the fourth degree and resisting arrest. *Id.* Plaintiff has been ordered to undergo a mental health examination during his incarceration and while awaiting trial.

## Legal Standard

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To

state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint").

In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## Discussion

### A. Three Strikes Dismissal Grounds

Because of plaintiff's prior filings in this Court, he is subject to 28 U.S.C. § 1915(g), which limits a prisoner's ability to obtain in forma pauperis status if he has filed at least three actions that have been dismissed as frivolous, malicious, or for failure to state a claim.[4] Section 1915(g) provides in relevant part:

> In no event shall a prisoner bring a civil action . . . under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action . . . in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

Section 1915(g) is commonly known as the "three strikes" rule, and it has withstood constitutional challenges. *See Higgins v. Carpenter*, 258 F.3d 797, 799 (8th Cir. 2001). Prisoners who have three strikes must prepay the entire filing fee for their case to proceed. *Lyon v. Krol,* 127 F.3d 763, 764 (8th Cir. 1997).

---

[4]The Court takes judicial notice that plaintiff is a prisoner who, while incarcerated, has filed at least three civil actions that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted. *See Curtis v. Nichols*, No. 4:19-CV-2597 SRC (E.D. Mo) (dismissal as *Heck*-barred); *Curtis v. House*, No. 4:19-CV-1810 (E.D. Mo) (dismissal for failure to state a claim); *Curtis v. Nichols*, No. 4:19-CV-1216 JAR (E.D. Mo) (dismissal as *Heck*-barred). *See Armentrout v. Tyra*, 175 F.3d 1023 (8th Cir. 1999) (per curiam) (indicating that a dismissal under *Heck* constitutes a strike). Therefore, the Court can allow plaintiff to proceed in forma pauperis only if the allegations in his complaint indicate he is under imminent danger of serious physical injury at the time he filed the pleading. *See* 28 U.S.C. § 1915(g).

Plaintiff has accumulated more than three strikes under this provision. As a result, this Court is unable to permit plaintiff to proceed in forma pauperis in this matter unless the "imminent danger" exception is applicable. 28 U.S.C. § 1915(g). Pursuant to § 1915(g), an indigent inmate who has acquired three strikes may still file a lawsuit if he or she is under imminent danger of serious physical injury. *Higgins*, 258 F.3d at 800. This exception provides a "safety valve for the three strikes rule to prevent impending harms." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). For this exception to apply, an otherwise ineligible prisoner must be in imminent danger at the time of filing. *Ashley v. Dilworth,* 147 F.3d 715, 717 (8th Cir. 1998). Allegations of past imminent danger are not sufficient to trigger the exception to § 1915(g). *Id.* A plaintiff must plead "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury;" conclusory assertions of ongoing danger are insufficient. *Martin*, 319 F.3d at 1050. Furthermore, the imminent danger "exception focuses on the risk that the conduct complained of threatens continuing or future injury." *Id.*

Courts may deny in forma pauperis and find no imminent danger if the claims of imminent danger are "conclusory or ridiculous." *See Ciarpaglini v. Saini*, 352 F.3d 328, 330-331 (9th Cir. 2003) (citing *Heimermann v. Litscher,* 337 F.3d 781, 782 (7th Cir. 2003) (contesting one's conviction and complaining of inadequate protection two years previously is not imminent danger)); *Martin*, 319 F.2d at 1050 (working in inclement weather twice is not imminent danger); *White v. Colorado*, 157 F.2d 1226, 1231 (10th Cir. 1998) ("vague and conclusory" assertions of withheld medical treatment when prisoner was seen over 100 times by physician is not imminent danger).

Plaintiff's complaint comprises approximately one full page of a "Statement of Claim." The issues presented in this case relate to plaintiff's claims that he was subjected to excessive force

during his arrest on February 25, 2023. He additionally alleges that during a strip search he was sexually assaulted when police officers ordered him to take his clothes off and "put a finger in [his] butt." Last, plaintiff objects to being held on suicide watch for several days in St. Charles County Correctional Center at the beginning of March 2023.[5]

Plaintiff's history, circumstances, and allegations do not indicate that he is in imminent danger of serious physical injury at the time he filed his complaint. Rather, his assertions show that he is contesting the circumstances of his February 25, 2023 arrest and subsequent imprisonment in the St. Charles County Correctional Center. Plaintiff thus fails to demonstrate that the exception to the three-strikes provision in § 1915(g) is applicable to him. Therefore, the Court will deny plaintiff's motion to proceed in forma pauperis and will dismiss this action without prejudice to plaintiff refiling a fully paid complaint.

**B. Alternative Dismissal Grounds**

In the alternative, Plaintiff's complaint is subject to dismissal on the merits, for failure to state a claim upon which relief can be granted.

First, plaintiff's allegations against the St. Peters Police Department and the St. Charles County Correctional Center are subject to dismissal because jails and local government detention centers are not suable entities under 42 U.S.C. § 1983. *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (affirming dismissal of § 1983 claim because "county jails are not legal entities amenable to suit."); *De La Garza v. Kandiyohi Cnty. Jail, Corr. Inst.,* 18 F. App'x 436, 437 (8th Cir. 2001) (holding that neither county jail nor sheriff's department is a suable entity under § 1983); *see also Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992)

---

[5] Plaintiff filed the instant lawsuit by placing his complaint in the mailing system at the St. Charles Correctional Center on March 23, 2023. He does not indicate that he is currently under imminent danger at the St. Charles Correctional Center.

(holding that departments or subdivisions of local government are "not juridical entities suable as such" under § 1983).

In addition, plaintiff is bringing this action against defendants in their official capacities only.[6] "[A]s a suit against a government official in his official capacity is functionally equivalent to a suit against the employing governmental entity, a suit against a government official in only his official capacity should be dismissed as redundant if the employing entity is also named." *King v. City of Crestwood, Mo.*, 899 F.3d 643, 650 (8th Cir. 2018). In this case, plaintiff's suit against the defendant police officers in their official capacities is the functional equivalent of a suit against St. Charles County, Missouri.[7]

A local governing body can be sued directly under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a municipality cannot be

---

[6] If a plaintiff's complaint is silent about the capacity in which the defendant is being sued, the complaint is interpreted as including only official capacity claims. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007); *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity"); *Artis v. Francis Howell N. Band Booster Ass'n, Inc.,* 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity"). Although plaintiff indicates he is suing Officer Smith in her official capacity, he is silent as to the capacities in which he is suing the other defendants. Therefore, the Court finds that plaintiff is suing the defendants in their official capacities only.

[7] As noted above, plaintiff also sues the State of Missouri, Governor Mike Parson and (former) Attorney General Eric Schmitt. These individuals are employed by the State of Missouri. However, the Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.,* 495 F.3d 591, 594 (8th Cir. 2007). "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart,* 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer immunity on a nonconsenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 2018 WL 2070564, at *1 (8th Cir. 2018) ("The Eleventh Amendment protects states and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.,* 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); *Egerdahl v. Hibbing Cmty. Coll.,* 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). To that end, the State of Missouri is protected from suit by the Eleventh Amendment.

held liable merely because it employs a tortfeasor. *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality … cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of St. Charles County, Missouri.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cnty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible … for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no evidence other than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

"A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." To do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Third, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).

In this case, plaintiff has failed to allege any facts alleging an unconstitutional policy, custom, or failure to train or supervise with respect to St. Charles County, Missouri. At a minimum,

the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). Plaintiff has failed to do so in this instance. As such, his claims against the defendant police officers in their official capacities are subject to dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's application to proceed in the district court without prepaying fees and costs [ECF No. 2] is **DENIED.**

**IT IS FURTHER ORDERED** that this action is subject to dismissal pursuant to 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that, in the alternative, this action is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B), for failure to state a claim upon which relief can be granted.

**IT IS HEREBY CERTIFIED** that an appeal from this action would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

_/s/ Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 12th day of April, 2023.